SYLVIA ADAIRE FOGL SALT v. APPLIED ANALYTICAL, INC.

No. 915SC336

(Filed 17 December 1991)

1. **Master and Servant § 10.2 (NCI3d)— employee discharge— violation of personnel manual—no breach of contract**

   The trial court properly granted summary judgment for defendant employer on plaintiff's claim for breach of her employment contract based on defendant's failure to follow the disciplinary procedures outlined in its personnel manual when it terminated plaintiff's employment where the evidence before the court showed that the personnel manual cannot be considered as part of plaintiff's contract of employment.

   **Am Jur 2d, Master and Servant §§ 48.3, 48.5.**

   **Right to discharge allegedly "at-will" employee as affected by employer's promulgation of employment policies as to discharge. 33 ALR4th 120.**

2. **Master and Servant § 10.2 (NCI3d)— employment handbook— no unilateral contract**

   An employment handbook does not constitute a unilateral contract which will give rise to a breach of contract action.

   **Am Jur 2d, Master and Servant §§ 48.3, 48.5.**

   **Right to discharge allegedly "at-will" employee as affected by employer's promulgation of employment policies as to discharge. 33 ALR4th 120.**

3. **Master and Servant § 10.2 (NCI3d)— wrongful discharge—no additional consideration—employment at will applicable**

   Plaintiff did not contribute additional consideration which would remove her employment from the scope of the employment at will doctrine where she failed to show that her move from Greenville to accept employment by defendant in Wilmington was induced by assurances concerning the duration of her employment or the discharge policies of defendant employer.

   **Am Jur 2d, Master and Servant §§ 32, 33.**

SALT v. APPLIED ANALYTICAL, INC.

[104 N.C. App. 652 (1991)]

4. **Master and Servant § 10.2 (NCI3d) — wrongful discharge — bad faith — insufficient allegations**

Plaintiff's allegations that defendant breached its covenant of good faith and fair dealing by disregarding its promise of a permanent job and by giving third parties false reasons for discharging plaintiff were insufficient to sustain a claim for wrongful discharge.

**Am Jur 2d, Master and Servant § 43.**

**Modern status of rule that employer may discharge at-will employee for any reason. 12 ALR4th 544.**

5. **Master and Servant § 10.2 (NCI3d) — wrongful discharge — bad faith — necessity for public policy violation**

There is no independent tort action for wrongful discharge of an at-will employee based solely on allegations of discharge in bad faith in the absence of a public policy violation. Furthermore, even if prior decisions created a wrongful discharge action based solely on bad faith in failing to follow personnel manual procedures, plaintiff has no cause of action against defendant because the policy manual given to her was not made an express part of her contract or made otherwise applicable to her, and her termination was not governed by the policy manual.

**Am Jur 2d, Master and Servant §§ 48.3, 48.5, 48.7.**

**Modern status of rule that employer may discharge at-will employee for any reason. 12 ALR4th 544.**

APPEAL by plaintiff from Order entered 22 January 1991 by *Judge Herbert O. Phillips, III,* in NEW HANOVER County Superior Court. Heard in the Court of Appeals in Wilmington on 17 October 1991.

*Patterson, Harkavy, Lawrence, Van Noppen & Okun, by Martha A. Geer, for plaintiff appellant.*

*Stevens, McGhee, Morgan, Lennon & O'Quinn, by Robert A. O'Quinn, for defendant appellee.*

COZORT, Judge.

Plaintiff employee brought an action for breach of employment contract and for wrongful discharge allegedly based on breach of

implied covenant of good faith and fair dealing. The trial court granted summary judgment for defendant employer. We affirm.

The depositions and other materials in the record demonstrate that, in 1985, plaintiff was employed at Burroughs Wellcome Company in Greenville, North Carolina, as a chemist testing pharmaceutical products. She held 11½ years of seniority, earned $22,000 a year, and received many company benefits. An employee of the defendant, Applied Analytical, Inc. ("AAI"), approached plaintiff about taking a chemist's position with AAI at a salary of $17,500-$18,500 per year. She declined the initial offers, but following negotiations, plaintiff accepted a position with defendant. One of the main topics discussed during the negotiations was plaintiff's need for job security. She informed defendant that if the job with AAI turned out to be unsatisfactory for either party, she would be unable to return to her job at Burroughs Wellcome, or any other pharmaceutical company, because she did not hold a four-year degree in chemistry. In response, the general manager at AAI discussed career growth with plaintiff and talked of plaintiff's future with the company in general terms. The letter from AAI's general manager confirming defendant's offer of employment stated:

> This letter is to confirm in writing my verbal offer to you of a Chemist position at Applied Analytical Industries, with an initial annual salary of $17,500.00.
>
> All of us at AAI are impressed with your qualifications and believe you can make significant contributions to our company. We hope you will accept our offer and believe you will find the position challenging and rewarding. As I indicated today during our telephone conversation, I believe the position which we are offering you will allow opportunities for your continued career growth in new areas involving method development for pharmaceutical dosage forms and bioanalytical assays for drugs in biological fluids.
>
> We would appreciate a response to our offer by April 8, 1985.

Plaintiff accepted defendant's offer and moved to Wilmington, North Carolina, where she began working for defendant in August 1985. In January, 1986, defendant granted plaintiff early tenure in the company, increased her salary by $2,000.00, and made her eligible for profit-sharing and a bonus. Plaintiff received positive evaluations from AAI supervisors after six months of employment,

and again after one year with the company. On 14 November 1986, AAI's president, Frederick Sancilio, called plaintiff into his office and presented her with a letter of termination. The letter stated plaintiff was being discharged for low productivity and for bothering other employees. Plaintiff adamantly protested the grounds for termination, reluctantly signed the letter, packed her personal belongings, and left the same day.

Plaintiff filed a complaint against defendant on 9 November 1988, alleging a claim for breach of contract. On 26 July 1989, the North Carolina Supreme Court handed down its decision in *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 381 S.E.2d 445 (1989). Based on the *Coman* decision, plaintiff moved to amend her complaint on 7 September 1989 to include a tort claim for breach of implied covenant of good faith and fair dealing. Defendant's responsive pleadings included a motion for summary judgment. The trial court granted summary judgment for defendant on 18 January 1991, and plaintiff filed timely notice of appeal.

The question before the Court when reviewing a summary judgment motion is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that a party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Meadows v. Cigar Supply Co.*, 91 N.C. App. 404, 371 S.E.2d 765 (1988). We consider first whether the trial court properly granted summary judgment on plaintiff's breach of contract claim.

It is clear in North Carolina that, in the absence of an employment contract for a definite period, both employer and employee are generally free to terminate their association at any time and without any reason. *Still v. Lance*, 279 N.C. 254, 182 S.E.2d 403 (1971). This Court has held, however, that in some circumstances employee manuals setting forth reasons and procedures for termination may become part of the employment contract even where an express contract is nonexistent. *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E.2d 79 (1985), *disc. review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986).

[1] Plaintiff argues initially that defendant's personnel manual constituted part of her employment contract. She contends the contract was breached because defendant failed to follow the disciplinary procedure outlined in the manual. In her deposition, plaintiff testified

she was given a copy of AAI's personnel manual on or about her first day of work at the company. Each employee, including plaintiff, was required to sign a statement verifying the receipt of the manual. Employees were also required to sign periodic verifications acknowledging they had read revisions to the manual. According to the defendant's manual, employees were classified as either "probationary" or "tenured." An employee would be classified as probationary for the first six months of satisfactory performance. The employee then is classified as a tenured employee.

The manual made no specific reference to "employment at-will." The section of the manual describing disciplinary procedures provided: "[T]he Company reserves the right, with or without guideline notification to: Terminate an employee at any time. Suspend from work any employee . . . [or] [r]eturn to probationary status from tenured status any employee . . . ." These rights were reserved for a "severe violation" of standards or rules by a "permanent" or "tenured" employee. The handbook's illustrations of "severe violations" included, but were not limited to: "blatant safety rule violations which endanger the health and safety of the employee and/or his fellow workers, falsification of Company records or data, misappropriation or misuse of Corporate assets, soliciting or engaging in outside activities of any kind or for any purposes on Company property at any time." For non-severe violations committed by a "tenured" employee, the manual provided for a verbal warning upon the first violation and written notices for the second and third violations. A tenured employee would be terminated after a fourth non-severe violation. Plaintiff contends she never received a verbal or written notice prior to termination, in violation of the prescribed disciplinary procedure.

It is clear that "unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it." *Walker*, 77 N.C. App. at 259, 335 S.E.2d at 83-84. In *Rosby v. General Baptist State Convention*, 91 N.C. App. 77, 370 S.E.2d 605, *disc. review denied*, 323 N.C. 626, 374 S.E.2d 590 (1988), this Court found no breach of contract by an employer when the employer's personnel policies were not incorporated into the oral contract for employment. The plaintiff received the employment manual when he was hired, and was told it would be his "work bible." The manual included a salary scale, conditions of employment, expected conduct of employer and the

employee, and procedures to be followed for disciplinary actions. *Id.* at 81, 370 S.E.2d at 608. The *Rosby* court stated:

> While we are sensitive to the "strong equitable and social policy reasons militating against allowing employers to promulgate for their employees potentially misleading personnel manuals while reserving the right to deviate from them at their own caprice" as enunciated in *Westinghouse, supra,* at 259, 335 S.E.2d at 83 (1985), we find that in the case *sub judice,* the material contained within the manual was neither inflexible nor all-inclusive on the issue of termination procedures. The manual, although presented as plaintiff's "work bible" when he was hired, was not expressly included within his terminable-at-will contract.

*Id.*

In contrast, in *Trought v. Richardson,* 78 N.C. App. 758, 338 S.E.2d 617, *disc. review denied,* 316 N.C. 557, 344 S.E.2d 18 (1986), this Court held that plaintiff stated a claim for breach of contract based on her allegation that the employer's policy manual was part of her employment contract. There the plaintiff was required to sign a statement indicating she had read the defendant's policy manual which provided she could be discharged "for cause" only and which stated that certain procedures must be followed in order for her to be discharged. *Id.* at 760, 338 S.E.2d at 618. The plaintiff alleged she was discharged without cause and without the benefit of the personnel manual procedures. *Id.* The Court concluded that "on hearing on a Rule 12(b)(6) motion the plaintiff has sufficiently alleged that the policy manual was a part of her employment contract which was breached by her discharge to survive her motion." *Id.* at 762, 338 S.E.2d at 620.

In *Harris v. Duke Power Co.,* 319 N.C. 627, 356 S.E.2d 357 (1987), the North Carolina Supreme Court limited the rule in *Trought* to those specific facts. The plaintiff in *Harris* contended that his employment manual was part of his contract for employment with defendant and that he was entitled to recover for breach of contract when he was discharged in violation of the manual's provisions. *Id.* at 630, 356 S.E.2d at 358. The Court distinguished *Trought,* finding that Harris had not been told that he could be discharged only "for cause." *Id.* The Court also noted that the employment manual in *Harris* provided rules of conduct which were directed specifically toward management and not targeted at employees. *Id.*

It is clear from the evidence below that the handbook given plaintiff by defendant cannot be considered part of her original contract. As a result, plaintiff's breach of contract claim based on this theory must fail.

[2] Plaintiff next argues that the employment handbook was an independent unilateral contract made by defendant to her. She argues she is entitled to recover for defendant's breach of that unilateral contract. We disagree. North Carolina has recognized a unilateral contract theory with respect to certain benefits relating to employment. In *Brooks v. Carolina Telephone*, 56 N.C. App. 801, 290 S.E.2d 370 (1982), the Court found severance payments part of a unilateral contract. In *Welsh v. Northern Telecom, Inc.*, 85 N.C. App. 281, 354 S.E.2d 746, *disc. review denied*, 320 N.C. 638, 360 S.E.2d 107 (1987), the court acknowledged vacation and retirement benefits. In *White v. Hugh Chatham Memorial Hosp. Inc.*, 97 N.C. App. 130, 387 S.E.2d 80, *disc. review denied*, 326 N.C. 601, 393 S.E.2d 890 (1990), the Court accepted disability payments. However, in *Rucker v. First Union Nat'l Bank*, 98 N.C. App. 100, 389 S.E.2d 622, *disc. review denied*, 326 N.C. 801, 393 S.E.2d 899 (1990), the Court declared, "We decline to apply a unilateral contract analysis to the issue of wrongful discharge. . . . [T]o apply a unilateral contract analysis to the situation before us would, in effect, require us to abandon the 'at-will' doctrine which is the law in this State. This we cannot do." *Id.* at 103, 389 S.E.2d at 625. We find *Rucker* to be dispositive in this case.

[3] Plaintiff next alleges she contributed additional consideration which would remove the contract from the scope of the employment at-will doctrine. In *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. review denied*, 314 N.C. 331, 335 S.E.2d 13 (1985), this Court carved out a significant exception from the employment at-will rule. There the plaintiff did not have an employment contract and thus was employed at-will. The plaintiff's complaint alleged that she was assured by Duke she could be discharged only for "incompetence," and these assurances induced her to move from Michigan to accept a job in Durham. *Id.* at 333, 328 S.E.2d at 821. The Court stated:

Generally, employment contracts that attempt to provide for permanent employment, or "employment for life," are terminable at will by either party. Where the employee gives some special consideration in addition to his services, such as relinquishing

SALT v. APPLIED ANALYTICAL, INC.

[104 N.C. App. 652 (1991)]

a claim for personal injuries against the employer, *removing his residence from one place to another in order to accept employment*, or assisting in breaking a strike, such a contract may be enforced. (Emphasis added.)

*Id.* at 345, 328 S.E.2d at 828 (quoting *Burkhimer v. Gealy*, 39 N.C. App. 450, 454, 250 S.E.2d 678, 682, *disc. review denied*, 297 N.C. 298, 254 S.E.2d 918 (1979)). The Court then determined:

The additional consideration that the complaint alleges, her move from Michigan, was sufficient, we believe, to remove plaintiff's employment contract from the terminable-at-will rule and allow her to state a claim for breach of contract since it is also alleged that her discharge was for a reason other than the unsatisfactory performance of her duties.

*Id.*

We find the facts below distinguishable from *Sides*. In *Sides*, the defendant assured the plaintiff "both at her job interview and again when the job was offered to her that nurse anesthetists at [the hospital] could only be discharged for incompetence." *Id.* at 333, 328 S.E.2d at 821. In the case at bar, the plaintiff cannot point to any specific assurances given to her which compare to the assurances given to the plaintiff in *Sides* that she would not be discharged except for "incompetence." The assurances upon which plaintiff here bases her breach of contract theory do not contain any specific terms or conditions, as in *Sides*. Plaintiff's deposition reveals:

Q. When you had your discussions with [the general manager], did you tell him that you would not take the job unless you understood that you had a permanent position there?

A. Not in those particular words, but—

Q. What did you tell him?

A. —I feel like we established the fact that if I were leaving my job at Burroughs Wellcome then I was going into a job—well, he told me he felt like I could have some career growth there, that there were things that they wanted me to do in the future as far as their microbiology lab and at the time it didn't exist but they wanted me to help them with the microbiology lab.

SALT v. APPLIED ANALYTICAL, INC.

[104 N.C. App. 652 (1991)]

And, we just talked about things that were far into the future that I couldn't just go to work there and just do.

And, he felt like I had a chance for some real career growth there and, you know, that it was for a permanent job.

Furthermore, a reading of defendant's letter confirming plaintiff's employment indicates no assurances concerning the duration of plaintiff's employment or relating to the discharge policies of the company. The letter's reference to "continued career growth" does not suffice. Plaintiff can show no more than an offer of employment for an undetermined time. The trial court's entry of summary judgment on plaintiff's breach of contract claim was properly granted.

We now turn to the claims plaintiff raised by the amendment to her complaint. Plaintiff asserts a claim against defendant for breach of implied covenant of good faith and fair dealing implicit in her employment contract. Plaintiff contends that defendant breached its implied covenant of good faith and fair dealing by discharging plaintiff in violation of defendant's personnel policy, by breaching defendant's assurance of permanent employment and by communicating to third parties false reasons for discharging plaintiff. We conclude the trial court properly granted summary judgment on this claim.

In *Coman v. Thomas Mfg. Co., Inc.*, 325 N.C. 172, 381 S.E.2d 445 (1989), the North Carolina Supreme Court created an exception to the employment at-will doctrine by authorizing a tort claim for wrongful discharge for an at-will employee whose discharge is in violation of a public policy. The Court specifically approved language from *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. review denied*, 314 N.C. 331, 335 S.E.2d 13 (1985). The Court, quoting *Sides*, stated:

[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

*Coman*, 325 N.C. at 175, 381 S.E.2d at 447 (quoting *Sides*, 74 N.C. App. at 342, 328 S.E.2d at 826). The Court defined public policy as being "the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public

or against the public good." *Id. Coman* therefore provides an exception to the employment at-will doctrine for employees who have been wrongfully discharged for an unlawful reason or for a reason which offends the public good.

In dicta, the Court, discussed the issue of firing an employee in bad faith:

> This Court has never held that an employee at will could be discharged in bad faith. To the contrary, in *Haskins v. Royster*, 70 N.C. 601 (1874), this Court recognized the principle that a master could not discharge his servant in bad faith. Thereafter, this Court stated the issue to be whether an agreement to give the plaintiff a regular permanent job was anything more than an indefinite general hiring terminable in *good faith* at the will of either party. *Malever v. Jewelry Co.*, 223 N.C. 148, 25 S.E.2d 436 (1943) (emphasis added).

*Id.* at 176-77, 381 S.E.2d at 448.

**[4]** The Court also said, "Bad faith conduct should not be tolerated in employment relations, just as it is not accepted in other commercial relationships." *Id.* at 177, 381 S.E.2d at 448. The plaintiff here does not contend that she has a cause of action because her termination contravened any public policy. Instead, she argues that *Coman* created a cause of action based solely on "a breach of the implied covenant of good faith and fair dealing." She contends the bad faith of the defendant is proven by defendant's disregarding its promise of a permanent job and by giving false reasons — poor performance — for her discharge. We do not find this evidence sufficient to sustain a tort claim for wrongful discharge.

In *McLaughlin v. Barclays American Corp.*, 95 N.C. App. 301, 382 S.E.2d 836, *disc. review denied*, 325 N.C. 546, 385 S.E.2d 498 (1989), this Court discussed whether the plaintiff there had sufficiently alleged a claim based on bad faith discharge. The plaintiff alleged that he had been fired because he struck a subordinate on the face with his hand while defending himself from an attack by the subordinate. This Court said:

> Along with the compelling public-policy concerns in those cases, moreover, the holdings in *Sides* and *Coman* are consistent with the principle that our courts do not give their imprimatur to employers who discharge employees in bad faith. ... We cannot say, however, that defendants' actions amounted

to bad faith. *Sides*, in language quoted with approval by our Supreme Court, noted the employer's right to terminate an at-will contract for "no reason, or for an arbitrary or irrational reason." The conduct of defendants in this case, in its worst light indifferent and illogical, does not demonstrate the kind of bad faith that prompted our courts to recognize causes of action in *Sides* and *Coman*.

*McLaughlin*, 95 N.C. App. at 306-07, 382 S.E.2d at 840 (citation omitted).

[5] The question presented here is whether *Sides*, *Coman*, and *McLaughlin*, read together, create a separate tort action based exclusively on discharge in bad faith, where no contravention of public policy is alleged or proven. We hold that there is no independent tort action for wrongful discharge of an at-will employee based solely on allegations of discharge in bad faith. As many have pointed out, the discussion of "bad faith" in *Coman* was pure dicta completely unnecessary to the Court's decision. *See, e.g.*, Alford, *Coman v. Thomas Manufacturing Co.*: **Recognizing a Public Policy Exception to the At-Will Employment Doctrine**, 68 N.C.L. Rev. 1178, 1192. Both *Coman* and *Sides* involved violations of public policy. Our research has not discovered a single case from a North Carolina court which has allowed a claim of wrongful discharge based solely on the theory of bad faith.

The federal courts sitting in North Carolina and applying North Carolina law to this issue are split on whether to allow bad faith discharge claims independent of public policy violations. One federal court in the Eastern District has specifically rejected the idea of permitting such a claim. In *English v. General Elec. Co.*, 765 F.Supp. 293 (E.D.N.C. 1991), the court refused to allow a plaintiff to maintain a bad faith discharge claim in the absence of an egregious public policy violation. The court reasoned:

> Despite plaintiff's assertion that North Carolina recognizes a cause of action for bad faith discharge, the court finds that the present position of the North Carolina courts is more limited. Currently, the judicially-created exception to the general rule that employees are terminable at will extends only to cases where the discharge violates some well established public policy.

> Clearly, the *Coman* and *McLaughlin* decisions contain language which could arguably lead to the adoption of a good

faith requirement for discharge in future cases. However, *Coman* and *McLaughlin* are grounded solely on the premise that North Carolina has created a public policy exception to the employment at-will doctrine, and any suggestion in those cases that there is a broader prohibition against discharges in bad faith is purely dicta. Although plaintiff argues that North Carolina courts would now recognize an exception to the employment at-will doctrine for bad faith discharges, the North Carolina Supreme Court in commenting on the effect of *Coman* stated that the employment at-will doctrine has "been *narrowly* eroded by statutory and public policy limitations on its scope." *Burgess v. Your House of Raleigh*, 326 N.C. 205, 210, 388 S.E.2d 134 (1990) (emphasis added).

*English*, 765 F.Supp. 293, 295-96 (citations omitted). The same rationale was applied in *Percell v. Int'l Business Machines, Inc.*, 765 F.Supp. 297 (E.D.N.C. 1991).

Courts in the Middle District, however, have held that a bad faith exception to employment at will exists under certain circumstances. *See, e.g., Iturbe v. Wandel & Goltermann Technologies, Inc.*, No. 90-CV-00242, (M.D.N.C. May 23, 1991); *Riley v. Dow Corning Corp., et al.*, 767 F.Supp. 735 (M.D.N.C. 1991); *Mayse v. Protective Agency, Inc.*, 772 F.Supp. 267 (1991). In *Iturbe*, the court upheld a plaintiff's claim for wrongful discharge based on two theories. First, the court allowed plaintiff's claim that she was wrongfully discharged in violation of the public policy against sex and ethnic discrimination. Second, the court ruled plaintiff had stated a claim of wrongful discharge based on bad faith where the defendant failed to follow personnel manual procedures when it discharged plaintiff.

To support its bad faith holding, the court in *Iturbe* discussed two cases cited in *Coman* which illustrated other jurisdictions' willingness to accept a bad faith exception to the employment at-will doctrine. Both cases allowed for a bad faith exception to employment at will where employees were fired in violation of written policy manuals. *See Kerr v. Gibson's Products Co.*, 226 Mont. 69, 733 P.2d 1292 (1987); *Cleary v. American Airlines Inc.*, 111 Cal. App. 3d 443, 168 Cal. Rptr. 722 (1980). The court in *Iturbe* found the plaintiff had stated an action where it was alleged that plaintiff's employers "had a written procedure for layoffs in which job performance was the primary factor in determining which employees

SALT v. APPLIED ANALYTICAL, INC.

[104 N.C. App. 652 (1991)]

would be laid off and seniority was a determining factor in cases where job performance was considered to be equal." *Iturbe*, slip opinion at 13. The court denied the defendant's motion to dismiss for failure to state a cause of action, concluding the plaintiff "has stated a claim that her termination was in violation of this written procedure. This is the type of bad faith discharge claim that the court believes the *Coman* and *McLaughlin* cases recognized." *Id.*, slip opinion at 14.

We believe the opinion in the *English* case from the Eastern District is a more accurate analysis of North Carolina law. Moreover, assuming arguendo that our Supreme Court intended, as the Middle District Court in *Iturbe* believes, to create a separate wrongful discharge claim grounded solely on bad faith with no claim based on public policy violations, the plaintiff in the case at bar still cannot survive defendant's summary judgment motion. A footnote in *Iturbe* gives the rationale for the Court's decision: "Since the court today only rules on the sufficiency of [plaintiff's] complaint, the court accepts as true [plaintiff's] allegations that the written procedure existed and that it *somehow governed her employment relation with [defendants], or her termination.*" *Id.*, slip opinion at 13 (emphasis added). As we stated earlier, plaintiff's employment relationship with defendant AAI was not "governed" by the policy manual given to her; the manual was not made an express part of her contract or made otherwise applicable to her. Therefore, even if we were to follow *Iturbe's* analysis of *Coman* and *McLaughlin*, plaintiff still has no cause of action because her termination was not governed by the employment manual. Plaintiff's allegations of bad faith, consisting of charges that defendant breached its assurance of permanent employment and that defendant communicated false reasons for firing plaintiff, simply have not been recognized as sufficient to sustain a cause of action for wrongful discharge.

To summarize, plaintiff has failed to prove a claim for breach of contract because (1) the employment manual upon which her contract claim was based was not a part of her employment contract; (2) unilaterally promulgated employment manuals do not affect the at-will nature of employment in North Carolina; and (3) plaintiff's additional consideration, moving from Greenville to Wilmington, was not in exchange for assurances of discharge only for fault. As to the tort claim alleging wrongful discharge, North Carolina law does not allow claims of bad faith discharge in the

LEONARD v. N.C. FARM BUREAU MUT. INS. CO.

[104 N.C. App. 665 (1991)]

absence of public policy violations. Assuming arguendo that such a claim is valid, plaintiff's evidence failed to prove that she has a claim for bad faith discharge.

The trial court's entry of summary judgment for defendant is

Affirmed.

Judges ARNOLD and LEWIS concur.