**Wayne WHALEY, Plaintiff,**

v.

**OLD DOMINION TOBACCO COMPANY, INC., and Chandler White, Defendants.**

**No. 92–124–CIV–3–H.**

United States District Court, E.D. North Carolina, Fayetteville Division.

Jan. 11, 1994.

---

Wayne Whaley, pro se.

Carl A. Barrington, Jr., Barrington, Jones & Herndon, P.A., Fayetteville, NC, for defendants.

### *ORDER*

MALCOLM J. HOWARD, District Judge.

This matter is before the court on the defendants' motion for summary judgment. In an order filed November 16, 1993, the court directed the parties to supply additional information and directed the plaintiff to file an amended complaint. All parties have responded to the order, and the motion for summary judgment is ripe for disposition.

The court notes that its November 16 order requesting additional information permitted each party to file one brief and declared that no responses or replies would be allowed. However, each of the parties filed a

response to the other's brief. The court has reviewed the responsive briefs and has decided, in its discretion, to accept the briefs and consider the information contained in them.

The court also notes that its November 16 order questioned whether this case fell within the court's subject matter jurisdiction. After reviewing the plaintiff's amended complaint, the court is satisfied that the case meets the requirements of diversity of citizenship jurisdiction under 28 U.S.C. § 1332. Plaintiff is a citizen of North Carolina, and defendant Chandler White ("White") is a citizen of South Carolina. Defendant Old Dominion Tobacco Company, Inc. ("Old Dominion"), is incorporated in Virginia and also has its principal place of business in Virginia. In addition, the amount in controversy exceeds $50,000. Accordingly, the court finds that it may properly rule on the defendants' summary judgment motion.

### STATEMENT OF THE CASE

Plaintiff filed this wrongful discharge action on November 5, 1992. In an order filed March 1, 1993, the court denied the defendants' motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Defendants filed a motion for summary judgment on August 27, 1993, and the court issued the November 16 order described above requesting additional information and directing the plaintiff to file an amended complaint.

### STATEMENT OF THE FACTS

Plaintiff is a former employee of defendant Old Dominion who worked for the company for approximately 33 years and was supervised by defendant White. On or about November 25, 1990, the plaintiff became ill and began an extended period of disability. Pursuant to Old Dominion's Employment Policies and Procedures manual ("the employment manual"), the plaintiff received disability payments from Old Dominion for approximately 52 weeks.

Old Dominion states that it paid the plaintiff his normal salary of $310.00 per week from mid-November 1990 through the pay period ending February 15, 1991. Thereafter, through the pay period ending November 22, 1991, Old Dominion states that it paid the plaintiff $155.00 per week ("Old Dominion disability payments"). Defs.' Resp. to Order at 1–2. In addition to this $155.00 per week from Old Dominion, the plaintiff was eligible to receive $150.00 per week from Aetna Insurance Company ("Aetna") under a group disability insurance plan which the plaintiff purchased through Old Dominion ("Aetna disability benefits").

Plaintiff concedes that he received all "checks and medical coverage from [Old Dominion]" which were promised in the employment manual. Pl.'s Resp. to Court Order at 2. However, the plaintiff contends that he did not receive $150.00 per week from Aetna. He supports his contention with a W-2 tax form indicating that he received only $975.00 from Aetna in 1991. Pl.'s Supp.Resp. to Court Order, Ex. A.

Plaintiff remained on disability until November 1991, when he notified the defendants that he was prepared to return to work on November 18, 1991. However, the plaintiff was unable to return to work because his job had been eliminated during his disability leave. According to defendant White, the job was eliminated due to restructuring of Old Dominion's business at its Fayetteville, North Carolina location where the plaintiff was employed.

> This restructure was required by local market changes and economic fluctuations (the troops were gone during the Persian Gulf War) and had nothing to do with Mr. Whaley.

8/25/93 Aff. of Chandler White, ¶ 5, attached to Defs.' Mem. in Supp. of Mot. for Summ.J.

The parties disagree on when the plaintiff was terminated and how the plaintiff received notice of his termination. Plaintiff contends that he was terminated in April 1991 by two fellow employees, Mark Pritchett and Harold Carter, who were acting under the "direct orders" of defendant White. Pl.'s Resp. to Mot. for Summ.J. at 2, ¶ 5. Plaintiff supports his allegation with affidavits from Pritchett and Carter.

Defendants contend that the decision to terminate the plaintiff was made in May 1991

but that he was not terminated until the 52–week period of disability benefits described in the employment manual expired in November 1991. Defendants acknowledge that the plaintiff probably learned of the decision to terminate his job from his fellow employees, Pritchett and Carter, "as early as May or June [1991]." Mem. in Supp. of Mot. for Summ.J. at 7. However, the defendants contend that the plaintiff was officially informed of the termination by White only when it became effective in November 1991. Defendants support their contentions with an affidavit from defendant White.

Defendants argue that they are entitled to summary judgment because the plaintiff was merely an "at-will" employee who did not have any employment contract with Old Dominion. In the alternative, the defendants contend that even if an employment contract existed, they are entitled to summary judgment because they did not breach the contract.

Plaintiff argues that the Old Dominion's employment manual "establishe[d] a written contract between [Old Dominion] and [the plaintiff]." Pl.'s Resp. to Mot. for Summ.J. at 1, ¶ 3. According to the plaintiff, the disability leave provisions located at page 13 of the manual created an employment contract for a specific length of time, the maximum 52–week disability period. In the plaintiff's view, the defendants breached this contract by terminating the plaintiff in April 1991 and by not returning him to his job at the end of his disability leave. Accordingly, the plaintiff urges the court to deny the defendants' summary judgment motion.

## DISCUSSION OF THE LAW

### I. Governing Legal Standards

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The non-moving party on a summary judgment motion is in a "favorable posture," because he is entitled to have any factual disputes resolved in his favor. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985), *abrogated on other grounds, Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct.

1775, 104 L.Ed.2d 268 (1989) (citations omitted).

■ In addition, the pleadings and arguments of a *pro se* party such as the plaintiff must be construed liberally. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### II. Plaintiff's Breach of Contract Claim

The court finds that it must apply the law of its forum state, North Carolina, to this action founded on diversity of citizenship. *See Fried v. North River Ins. Co.,* 710 F.2d 1022, 1024 (4th Cir.1983), *citing Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) ("In [a] diversity case [the court] appl[ies] the law of the North Carolina forum."). The court further finds that under North Carolina law, the plaintiff was apparently an "at-will" employee whose employment manual probably did not qualify as an employment contract. *See Salt v. Applied Analytical Inc.,* 104 N.C.App. 652, 657, 412 S.E.2d 97 (1991), *discr. rev. denied,* 331 N.C. 119, 415 S.E.2d 200 (1992) (" '[W]e find that in the case *sub judice,* the material contained within the manual was neither inflexible nor all-inclusive on the issue of termination procedures. The manual, although presented as plaintiff's "work bible" when he was hired, was not expressly included within his terminable-at-will contract.' ") (citation omitted).

However, even assuming that the employment manual created a contract between the plaintiff and Old Dominion, the court finds that the plaintiff's claims must fail. In the court's view, Old Dominion's provision of disability payments to the plaintiff and Old Dominion's termination of the plaintiff's job met all of the requirements of the manual.

#### A. Old Dominion's Provision of Disability Payments

■ The extent of disability payments promised to disabled employees at page 13 of

Old Dominion's employment manual depended on the employee's length of service with Old Dominion. For an employee such as the plaintiff, who had more than fifteen years of service, Old Dominion promised to pay the employee's normal salary for the first four weeks of his disability. "Thereafter, if still disabled, [the employee was] paid a weekly amount equal to 50% of [his] normal weekly earnings for the duration of [his] disability, but the period of such payments [could not] exceed fifty two weeks" ("Old Dominion disability payments"). Employment Manual at 13, Ex. E to Defs.' Mem. in Supp. of Mot. for Summ.J. The manual also noted that such payments would be "in addition to benefits paid to [the employee] by the Aetna group insurance plan." *Id.* ("Aetna disability benefits").

As noted *supra* at 3, the plaintiff conceded that he received all of the Old Dominion disability payments which were promised in the employment manual. Accordingly, the court finds that even if the promise of disability payments in the manual created an employment contract, Old Dominion did not breach the contract.

■ The court notes that the plaintiff's supplemental response to the court's November 16 order asserted that the plaintiff did not receive the Aetna disability benefits which the plaintiff apparently purchased under the Aetna group disability insurance plan offered through Old Dominion. To the extent that the plaintiff is arguing that Old Dominion failed to meet its obligations under the employment manual because the plaintiff did not receive the Aetna disability benefits, the court finds that the plaintiff's argument must be rejected.

Although the employment manual offered the Aetna group disability insurance plan to Old Dominion employees, the court finds that the manual did not promise that Old Dominion would execute the paperwork necessary to begin payment of Aetna disability benefits to an employee who became disabled. In the court's view, the manual was consistent with Old Dominion's contention that "[i]t was the responsibility of the plaintiff to apply for [the Aetna disability] benefits during his illness." Defs.' Supp.Resp. to 11/16/93 Order at 2.

Accordingly, the court finds that the employment manual imposed no obligation on Old Dominion to ensure that the plaintiff received Aetna disability benefits. Plaintiff may still be able to collect these benefits from Aetna, but his possible claim against Aetna has no bearing on whether Old Dominion provided the plaintiff with all of the Old Dominion disability payments promised in the employment manual.

As a result, assuming that the employment manual was an employment contract, the court finds that Old Dominion's failure to ensure that the plaintiff received the Aetna disability benefits was not a breach of the contract. Regardless of whether the plaintiff collected the benefits he paid for under the Aetna group disability insurance plan, the court finds that the record conclusively demonstrates that the plaintiff received all of the Old Dominion disability payments which were promised in the employment manual.

**B. Old Dominion's Termination of the Plaintiff's Job**

■ The court finds that Old Dominion did not violate any provisions of the employment manual by eliminating the plaintiff's job while he was on disability leave. The court has reviewed the employment manual and finds no support in the record for the plaintiff's naked assertion that the employment manual,

> pages 13 and 14, clearly impl[ies] that PLAINTIFF and any other employee who goes on sick leave (with over 15 years of service) and returns to work before the [maximum] 52–week [disability] period expires will be returned to his job with the company.

Pl.'s Resp. to Mot. for Summ.J. at 2, ¶ 6.

Page 13 of the employment manual describes the Old Dominion disability payments discussed above. Page 14 declares that an employee such as the plaintiff, who seeks to return to his job after a leave of absence,

> will be considered for either [his] original job, if vacant, or others as soon as such positions become available. If a suitable position is not available by the time the leave expires, employees will be placed on

a waiting list for employment. Employment procedures thereafter will be handled in the same manner as would be followed for a new employee.

Consistent with this policy, defendant White testified in an affidavit that the plaintiff "was on a leave of absence status" and that he "may be considered for re-employment as per company policy in the event the Fayetteville offices are reopened." 8/25/93 Aff. of Chandler White, ¶ 2 and ¶ 9, attached to Defs.' Mem. in Supp. of Mot. for Summ.J.

After reviewing page 14 of the employment manual and the affidavit of defendant White, the court finds that Old Dominion did not violate the provisions of the manual by failing to return the plaintiff to his job after his disability leave. The plain language of the manual makes clear that an Old Dominion employee was not guaranteed a job after a leave of absence, and the White affidavit indicates that the plaintiff may be considered for reemployment in the future as required by the manual.

The court further finds that the parties' factual dispute over whether the plaintiff was terminated in April 1991 or November 1991 is immaterial to the court's conclusion that Old Dominion did not violate the provisions of the employment manual by failing to return the plaintiff to his job after his disability leave of absence. Plaintiff provided affidavits from fellow employees Mark Pritchett and Harold Carter stating that defendant White ordered them to inform the plaintiff in April 1991 that the plaintiff's job had been terminated. *See* Exs. A and B to Pl.'s Resp. to Mot. for Summ.J. Plaintiff provided an affidavit confirming the Pritchett and Carter affidavits. *See* Ex. C to Pl.'s Resp. to Mot. for Summ.J.

In contrast, defendant White provided answers to interrogatories and an affidavit declaring the decision to terminate the plaintiff was made in May 1991 but that the plaintiff was not discharged until November 1991. *See* Ex. F to Pl.'s Resp. to Mot. for Summ. J. and Ex. A to Defs.' Mem. in Supp. of Mot. for Summ.J. Defendant White also supplied an answer to an interrogatory stating that "[n]o orders were given to any employees concerning Wayne Whaley's employment status in April, 1991." *See* Ex. E to Pl.'s Resp. to Mot. for Summ.J.

To be sure, the affidavits create a factual dispute regarding the time and method of the plaintiff's termination. In the court's view, however, the dispute is "irrelevant" to the court's finding that Old Dominion did not violate the provisions of the employment manual by failing to provide the plaintiff with a job when he finished disability leave. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted."). The dispute is irrelevant because, regardless of when or how the plaintiff learned of his termination, the employment manual did not promise the plaintiff that he would have a job with Old Dominion after his disability leave.

Despite the termination, the plaintiff received all of the disability payments promised in the employment manual and also received all of the possibility of future employment promised in the manual. As a result, assuming that the Old Dominion employment manual amounted to an employment contract, the court finds that Old Dominion did not breach the contract by terminating the plaintiff's job during the plaintiff's disability leave.

### III.   Plaintiff's Remaining Claims

Although the plaintiff relied exclusively upon his contract claims to oppose the defendants' motion for summary judgment, the court notes that the amended complaint contained several tort allegations. According to the plaintiff's memorandum in opposition to the defendants' earlier motion to dismiss, paragraphs 13, 16, 17, 19, 20, and 27 of the complaint were intended to state tort claims. Pl.'s Resp. to Mot. to Dism. at 1.

These paragraphs contend that the plaintiff suffered physical and emotional harm as a result of learning that his job was terminated. According to paragraph 20, the defendants conveyed news of the termination to the plaintiff "to prevent [p]laintiff's recovery, both physically and mentally." According to paragraph 27, the defendants terminated the plaintiff because of the plaintiff's "diabetic

condition" and "to keep company insurance premiums low." Other paragraphs allege that the defendants hired someone else to replace the plaintiff and that the "[d]efendants intended to cause [p]laintiff severe emotional stress and harm." Revised Compl. ¶¶ 26, 29.

■ As an initial matter, the court again finds that the plaintiff was likely an at-will employee and, as a result, cannot maintain a tort action for wrongful discharge. *See Guy v. Travenol Lab., Inc.,* 812 F.2d 911, 912 (4th Cir.1987), *abrogation on other grounds recognized by Leach v. Northern Telecom, Inc.* 141 F.R.D. 420 (E.D.N.C.1991) ("In its pristine form, the doctrine of employment at will permits an employee to be discharged for almost any reason. As a matter of tort law, the doctrine precludes an action for wrongful discharge [in North Carolina].") and *Salt v. Applied Analytical, Inc.,* 104 N.C.App. at 662, 412 S.E.2d 97 ("there is no independent tort action for wrongful discharge of an at-will employee based solely on allegations of discharge in bad faith").[1] However, in the absolute interest of justice and fairness, the court will briefly analyze the plaintiff's tort claims.

The court is not sure whether the tort claims are independent claims for relief or whether they are dependent on the plaintiff's contract claims. *See* Pl.'s Resp. to Court Order at 1 ("[d]efendants did send a check and maintained medical coverage for the Plaintiff until November 1991, but [p]laintiff was forced to live from day to day without the security that the Employee–Employer Contract guaranteed. This ordeal of wait and hope was too much for anyone, especially a diabetic recovering from serious operations to endure."). Because the court must liberally construe the *pro se* plaintiff's complaint, the court will address each possibility.

■ First, the court finds that to the extent the tort claims are dependent on the contract claims, the tort claims lack merit. For the reasons discussed above, the court has found that the even if the employment

manual was an employment contract, Old Dominion did not breach the contract. As a result, to the extent the plaintiff's tort claims depend on a finding that the plaintiff suffered physical and emotional harm as a result of the defendants' breach of contract, the tort claims must fail.

■ Second, assuming that the tort allegations are intended to be independent claims for relief, the court finds that the plaintiff did not present any evidence in support of the claims beyond the bare allegations of the complaint. Federal Rule of Civil Procedure 56(e) demands that a party such as the plaintiff who opposes a summary judgment motion "must set forth specific facts showing that there is a genuine issue for trial." These specific facts can be presented in a variety of ways, including affidavits and answers to interrogatories.

In the present case, the court finds that the briefs, affidavits, and answers to interrogatories presented by the plaintiff in opposition to the defendants' summary judgment motion supported the plaintiff's contract claims but provided no factual basis for any of the plaintiff's tort claims. As a result, the court further finds that the tort claims are unable to withstand the defendants' summary judgment motion.

Finally, the court notes that the plaintiff may be attempting to raise a claim of unfair and deceptive trade practices. *See* Pl.'s Resp. to Mot. for Summ.J. at 3, ¶ 10 ("[The Old Dominion employment manual] was written in a way to totally deceive the employees, which is unfair and deceptive."). To the extent the plaintiff is pursuing this claim, the court finds that it is wholly without merit.

## CONCLUSION

For the aforementioned reasons, it is hereby ORDERED that the defendants' motion for summary judgment is GRANTED. It is

---

1. The one exception to the rule against wrongful discharge tort actions is that an employee may seek "tort remedies for wrongful discharge based on the public policy exception to the employment-at-will doctrine." *Amos v. Oakdale Knitting Co.,* 331 N.C. 348, 360, 416 S.E.2d 166 (1992). The court finds no basis for applying the public policy exception in the present case.

further ORDERED that this case is CLOSED.