23 F.3d 401
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Bobby JOHNSON, Plaintiff-Appellant,
v.
PEPPERIDGE FARM, INCORPORATED, Defendant-Appellee.
 No. 93-1386.
 United States Court of Appeals,
 Fourth Circuit.
Argued Dec. 8, 1993.
Decided Apr. 4, 1994.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CA-91-139-C-C-MU)
 H. Morris Caddell, Jr., Bailey, Patterson, Caddell, Hart & Bailey, P.A., Charlotte, N.C., for appellant.
 Lynn Oliver Wenige, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., for appellee.
 On Brief: Clifford R. Jarrett, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 After an on-the-job injury caused him to miss work for over a year, Bobby Johnson was terminated by Pepperidge Farm, Inc. ("Pepperidge Farm") pursuant to its attendance policy which provides in part that employees may not be absent from work for more than a year. The district court granted Pepperidge Farm's motion for summary judgment and dismissed Johnson's causes of action for retaliatory discharge, bad faith discharge, discharge in violation of public policy and intentional and negligent infliction of emotional distress. Johnson appeals the district court's grant of summary judgment against him. We find no merit in Johnson's arguments and, accordingly, affirm the district court's judgment.
 
 I.
 
 2
 Pepperidge Farm manufactures bakery products which are sold in grocery stores throughout the United States. Its corporate offices are located in Norwalk, Connecticut. Johnson was hired by Pepperidge Farm in 1978 as a district sales manger in North Carolina.
 
 
 3
 In September of 1989, Pepperidge Farm reassigned Johnson to the position of account specialist. In this position, he called on Food Lion stores in a five state territory, and was responsible for increasing product sales. At times, as part of his job, he had to help set up heavy merchandizing displays.
 
 
 4
 Around February 16, 1990, Johnson developed back problems and missed one day of work before March 26, 1990. After March 26, he did not return to work. Johnson reported to both Steve Bruton, his supervisor, and to Kathleen Griffin, a human resources assistant, that he had injured his back while on the job several weeks earlier. Pepperidge Farm's workers' compensation carrier, The Travelers Insurance Company ("The Travelers"), was notified and interviewed Johnson. The Travelers concluded that Johnson's injury was not work related, and denied his claim on April 17, 1990. Johnson appealed The Travelers' finding to the North Carolina Industrial Commission ("Industrial Commission") on May 10, 1990. On December 31, 1990, the Industrial Commission found that Johnson had sustained an on-the-job injury entitling him to workers' compensation benefits.
 
 
 5
 As part of an "absence control policy," Pepperidge Farm limits leaves of absence to no more than 12 months. The policy has been in effect since 1981 and applies to any leave of absence, medical or otherwise.
 
 
 6
 Johnson routinely contacted Griffin by telephone during his absence to update his medical status. During one of these calls in mid-December of 1990, Griffin advised him that Pepperidge Farm's attendance policy provided that leaves of absence were limited to no longer than one year. Later, by letter dated January 23, 1991, she informed Johnson that if he did not return to his regular duties by March 26, 1991, a full year after he had last reported for work, he would be terminated pursuant to the company's absence control policy. By mid-March of 1991, Johnson had not returned to work. Accordingly, Pepperidge Farm notified him that his employment would be terminated effective March 26, 1991.
 
 
 7
 Johnson's disability is permanent. At his deposition taken in December 1991, Johnson stated that the Industrial Commission had determined that his total loss of mobility was twenty-five percent. He also testified that he was experiencing both double-vision and high blood pressure, would never be able to lift anything over 15 pounds[1] and could not drive. At that time, his therapist was "hopeful" that he could return to gainful employment in 4-6 months. J.A. at 110. The job description of an account specialist requires the employee to drive 25,000 to 35,000 miles per year, and to be able to lift "units" weighing up to 25 pounds. J.A. at 63.
 
 
 8
 Shortly after Johnson's termination, Bruton, his supervisor, and Dennis Smith, an area sales manager, came to his home to collect a company car. Johnson later alleged that the two men verbally abused him, and that Bruton stated he did not believe Johnson's injury was genuine. Johnson claimed he experienced an anxiety attack as a result of this visit. Bruton denied making any disparaging remarks to Johnson. At his deposition, Johnson admitted that the extent of any confrontation he had with Bruton that day was "very little ... [Bruton] commented, 'Oh, he's even got his little brace on today.' " J.A. at 95, 116.
 
 II.
 
 9
 We review the district court's grant of summary judgment de novo. Higgins v. E. I. Du Pont De Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988). Summary judgment is appropriate g"if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Proc. 56(c). When a moving party supports its motion under Rule 56 with affidavits and other appropriate materials pursuant to the rule, the opposing party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... the response ... by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Proc. 56(e). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation omitted).
 
 III.
 
 10
 Johnson argues that the district court improperly ignored certain inferences about Pepperidge Farm's motion for terminating him when it dismissed his claim for retaliatory discharge. In North Carolina, a suit for retaliatory discharge is governed by N.C. Gen.Stat. Sec. 97-6-1, which provides in part:
 
 
 11
 (a) No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the North Carolina Workers' Compensation Act, or has testified or is about to testify in any such proceeding.
 
 
 12
 (b) Any employer who violates any provision of this section shall be liable in a civil action for reasonable damages suffered by an employee as a result of the violation, and an employee discharged or demoted in violation of this section shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.
 
 
 13
 (c) Any employer shall have as an affirmative defense to this section the following: willful or habitual tardiness or absence from work ... or for violating specific written company policy of which the employee has been previously warned and for which the action is a stated remedy of such violation.
 
 
 14
 ...
 
 
 15
 (e) The failure of an employer to continue to employ, either in employment or at the employee's previous level of employment, an employee who receives compensation for permanent total disability, or a permanent partial disability interfering with his ability to adequately perform work available, shall in no manner be deemed a violation of this section.
 
 
 16
 The district court found as a matter of law that Pepperidge Farm was entitled to the statutory defenses accorded an employer under subsections (c) and (e).
 
 
 17
 The district court first analyzed the retaliatory discharge claim under Sec. 97-6-1(e). In Johnson v. Builders Transport, Inc., 79 N.C.App. 721, 340 S.E.2d 515 (1986), the North Carolina Court of Appeals upheld a grant of summary judgment underSec. 97-6-1(e) for the defendant-employer where the plaintiff, a former truck driver for the defendant, had a 15% permanent partial disability which interfered with his ability to adequately perform his work. In reaching its decision, the court of appeals held that allegations of the employer's reasons for the termination were immaterial based on the uncontroverted evidence of the bona fide defense provided bySec. 97-6-1(e). Johnson, 340 S.E.2d at 518.
 
 
 18
 These same principles apply with equal force to this appeal. As the record clearly demonstrates, Bobby Johnson had suffered a permanent partial disability, and this disability interfered with his ability to adequately perform available work.[2]
 
 
 19
 Alternatively, the district court found that Pepperidge Farm had established the affirmative statutory defense provided for in Sec. 97-6-1(c).[3] Subsection (c) makes willful or habitual absence from work an affirmative defense to a claim for retaliatory discharge. Subsection (c) also applies as a defense where the employee violates a specific written company policy about which he was previously warned, and for which the action taken is a stated remedy. It is undisputed that not only did Johnson violate Pepperidge Farm's absence control policy, but he also admitted that he received prior notice of this written policy. Therefore, we find that Pepperidge Farm was entitled to summary judgment on this issue as well.
 
 IV.
 
 20
 Johnson also cites as error the district court's dismissal of his claims under North Carolina law of bad faith discharge and discharge in violation of public policy.
 
 
 21
 The district court dismissed Johnson's cause of action for bad faith discharge because it found that North Carolina does not recognize such a claim. See English v. General Elec. Co., 765 F.Supp. 293, 296 (E.D.N.C.1991), aff'd, 977 F.2d 572 (4th Cir.1992) (dismissing language in other cases seemingly supportive of actionable claim for bad faith discharge as dicta ); and Salt v. Applied Analytical, Inc., 104 N.C.App. 652, 412 S.E.2d 97 (1991), cert. denied, 331 N.C. 119, 415 S.E.2d 200 (1992). Recently, the North Carolina Supreme Court definitively answered this question by holding that a separate claim for bad faith discharge has never been actionable in North Carolina. Amos v. Oakdale Knitting Co., 331 N.C. 348, 416 S.E.2d 166, 173 (1992) (citing Salt, supra, with approval). Accordingly, appellant's claim for bad faith discharge was properly dismissed.
 
 
 22
 Appellant's claim for discharge in violation of public policy is a recognized exception to the North Carolina employment-at-will doctrine. See Coman v. Thomas Mfg. Co., 325 N.C. 172, 381 S.E.2d 445 (1989); Sides v. Duke Hosp., 74 N.C.App. 331, 328 S.E.2d 818 (1985). Johnson argues that a violation of the retaliatory discharge statute constitutes a violation of the public policy of North Carolina as embodied therein; i.e., termination of an employee for filing a workers' compensation claim is a violation of public policy.
 
 
 23
 The public policy exception has been applied in North Carolina where the employer's action is "injurious to the public or against the public good." Amos, 416 S.E.2d at 168. Public policy violations have been found in only a few, specific contexts. For example, the exception has been applied where the employer's action has put the employee in the position of choosing between violating the law or losing his or her job. See Coman, 381 S.E.2d at 447-48 (holding dismissal of an at-will employee actionable as wrongful discharge for refusing to operate truck and falsifying records in violation of federal law); Sides, 328 S.E.2d at 826-27 (finding that discharge of at-will employee for refusing to testify falsely is enforceable under public policy doctrine); Harrison v. Edison Bros. Apparel Stores, Inc., 924 F.2d 530, 534 (4th Cir.1991) ("the Coman exception ... definitely includes firings resulting from an employee's refusal to follow his employer's instructions to violate the law.") The exception has also been applied "when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." Amos, 416 S.E.2d at 169.
 
 
 24
 We agree with the district court that the facts presented by the appellant's case do not fit into the limited contexts in which the public policy exception exists. Equally important, since we have found that there has been no violation of N.C. Gen.Stat. Sec. 97-6.1, it is manifest that there can be no violation of any public policy expressed by this statute.
 
 V.
 
 25
 Appellant also appeals the dismissal of his claims for both intentional and negligent infliction of emotional distress. A claim for intentional infliction of emotional distress is a legal question for the court. Briggs v. Rosenthal, 73 N.C.App. 672, 327 S.E.2d 308, cert. denied, 314 N.C. 114, 332 S.E.2d 479 (1985). The elements of the claim include: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause, (3) severe emotional distress to another. See Trought v. Richardson, 78 N.C.App. 758, 338 S.E.2d 617, 620, review denied, 316 N.C. 557, 344 S.E.2d 18 (1986). The conduct must reach a level which "exceeds all bounds usually tolerated by decent society." Frazier v. First Union Nat. Bank, 747 F.Supp. 1540, 1553 (W.D.N.C.1990). Even assuming the facts alleged by the appellant are true and he was verbally abused, we agree with the district court that those facts are not at a level sufficient to maintain a claim for intentional infliction of emotional distress under North Carolina law.
 
 
 26
 We also agree with the district court that nothing alleged by the appellant states a possible claim for negligent infliction of emotional distress. North Carolina's workers' compensation act precludes a finding of liability for common law negligence. See N.C. Gen.Stat. Sec. 97-10.1. Zocco v. United States Dept. of Army, 791 F.Supp. 595, 598 (E.D.N.C.1992).
 
 VI.
 
 27
 For the reasons stated, Appellant's assignments of error are meritless.
 
 AFFIRMED
 
 
 [1]
 Later in his affidavit submitted in opposition to appellee's motion for summary judgment he stated he was able to lift over 25 pounds
 
 
 [2]
 The theory advanced by Johnson that certain inferences may be found regarding Pepperidge Farm's motive for firing him are not material to the issue of this defense. See Johnson, ibid . Where it is properly established, as is the case here, N.C. Gen.Stat. Sec. 97-6-1(e) provides employers with a bona fide defense without reference to their motive for discharging an employee
 
 
 [3]
 The district court's order mistakenly refers to this as subsection (e) on page 4