WILLIAM DWIGHT BOESCHE, Plaintiff v. RALEIGH-DURHAM AIRPORT AUTHORITY, et al., Defendants

No. 9215SC23

(Filed 20 July 1993)

1. **Labor and Employment § 66 (NCI4th); Constitutional Law § 85 (NCI4th) — employer's drug testing policy — plaintiff in position to affect public safety or safety of others — constitutional policy**

   The drug testing policy implemented by defendant airport authority was constitutional where plaintiff was authorized to drive a vehicle on the apron of the flight area of Raleigh-Durham airport; he was in a position in which public safety or the safety of others was an overriding concern; and there thus existed a legitimate reason for the implementation of a drug testing program.

   **Am Jur 2d, Constitutional Law §§ 557-573; Master and Servant §§ 49-59.**

2. **Labor and Employment § 63 (NCI4th) — wrongful discharge — bad faith exception not recognized**

   North Carolina does not recognize an independent tort claim for wrongful discharge under the bad faith exception.

   **Am Jur 2d, Master and Servant §§ 27-33.**

3. **Labor and Employment § 66 (NCI4th); Constitutional Law § 85 (NCI4th) — random drug testing — testing procedure constitutional — no testing performed on plaintiff — dismissal of constitutional claims proper**

   The trial court properly dismissed plaintiff's constitutional claims against defendant airport authority's random drug testing procedure policy that afforded plaintiff no prior notice of testing or test procedure, that included no guarantee of confidentiality of test results or immunity from criminal prosecution in the case of a positive result, and that led to plaintiff's termination with no opportunity for a hearing before an impartial tribunal, since (1) defendant's random drug testing procedure was constitutional, and (2) plaintiff never participated in the testing procedure which effectively precluded any possible constitutional violation.

BOESCHE v. RALEIGH-DURHAM AIRPORT AUTHORITY

[111 N.C. App. 149 (1993)]

Am Jur 2d, Constitutional Law §§ 557-573; Master and Servant §§ 49-59.

Appeal by plaintiff from order entered 4 November 1991 by Judge Robert H. Hobgood in Orange County Superior Court. Heard in the Court of Appeals 9 December 1992.

*Loftin and Loftin, by John D. Loftin, for plaintiff-appellant.*

*Walter H. Bennett, Jr. for plaintiff-appellant.*

*Newsom, Graham, Hedrick, Bryson & Kennon, by Lewis A. Cheek, Richard S. Boulden and John R. Long, for defendants-appellees.*

JOHNSON, Judge.

Plaintiff, William D. Boesche, was employed by the defendant, Raleigh-Durham Airport Authority, as a Maintenance Mechanic II on or about 30 August 1987. Plaintiff's employment duties generally consisted of performing preventative maintenance and repairs on airport terminal air conditioning and ventilating and heating systems. Throughout his employment tenure, plaintiff had performed his job duties competently and satisfactorily. Based on this satisfactory performance, plaintiff had received two merit pay raises.

On 21 February 1990, plaintiff was approached by defendant's Airport Maintenance Manager, Mr. Owens, who asked plaintiff to accompany him to Park Medical Center in Wake County to submit to a urine drug test. Mr. Owens did not express that plaintiff was suspected of any individualized wrongdoing. Plaintiff refused to submit to the test.

Plaintiff demanded to see defendant Airport Personnel Manager Farrar-Luten who told plaintiff that the new proposed testing policy was implemented pursuant to a Federal Aviation Administration directive requiring that all employees who drive a motor vehicle in the airside of the airport must be tested. Plaintiff asked to see the directive, but Farrar-Luten refused to show him the directive.

Plaintiff then saw defendant Airport Director Brantley who told plaintiff that plaintiff must submit to a drug test because that was the airport's policy. Upon plaintiff's refusal to submit to the drug test, he was discharged.

**BOESCHE v. RALEIGH-DURHAM AIRPORT AUTHORITY**

[111 N.C. App. 149 (1993)]

On 26 April 1991, plaintiff filed a complaint in this action alleging the aforesaid facts and claiming that the actions of the defendants violated his rights to be free from illegal searches and invasion of privacy under the Fourth Amendment to the United States Constitution and Article I, Sections 20, 35 and 36 of the North Carolina Constitution; his rights to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections 1, 19, 35 and 36 of the North Carolina Constitution; his right not to be discharged from employment in bad faith or for reasons contravening public policy under the common law of North Carolina; and for the common law tort of intentional/negligent infliction of emotional distress. Defendants moved to dismiss the complaint as amended under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on the grounds that it failed to state a claim upon which relief could be granted. On 4 November 1991, the motion to dismiss was granted in its entirety. Plaintiff appealed.

By plaintiff's first assignment of error, plaintiff contends that the trial court committed reversible error by dismissing plaintiff's claim for wrongful discharge of a public employee under the public policy and bad faith exceptions to the employment at will doctrine, where plaintiff was discharged for his refusal to waive his rights to due process of law, privacy, and freedom from unreasonable search and seizure of his person by submitting to an unconstitutional drug test. We disagree.

On review of a motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, all allegations of fact are taken as true but conclusions of law are not. *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970). The trial court's dismissal of plaintiff's complaint under Rule 12(b)(6) is proper and must be sustained when (1) the complaint on its face reveals that no law supports plaintiff's claim; (2) the complaint on its face reveals the absence of fact sufficient to make a good claim; and (3) some facts disclosed in the complaint necessarily defeat the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743 (1986).

With this in mind, we now address plaintiff's claim that by his discharge, defendants violated North Carolina public policy. Generally, North Carolina adheres to the employment-at-will doctrine which holds that absent a contract of employment for a definite

term, the employee-employer relationship can be terminated by either party at any time for any reason or no reason. *Salt v. Applied Analytical, Inc.*, 104 N.C. App. 652, 655, 412 S.E.2d 97, 99 (1991); *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 137 (1990); *Still v. Lance*, 279 N.C. 254, 259, 182 S.E.2d 403, 406 (1971). There have been several exceptions carved out of the employment-at-will rule. The legislature has enacted certain statutory exceptions that place certain limitations on this rule, i.e., prohibiting discharge in retaliation for filing a workers' compensation claim, North Carolina General Statutes § 97-6.1 (1983); prohibiting discharge for engaging in labor disputes, North Carolina General Statutes § 95-83 (1985); and prohibiting discharge for filing Occupational Safety and Health Act claims, North Carolina General Statutes § 95-130(8) (1985).

North Carolina Courts have also placed some limitations on the doctrine by the creation of two public policy exceptions. The first public policy exception was created in *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. review denied*, 314 N.C. 331, 334 S.E.2d 13 (1985). In *Sides*, the Court was reviewing the dismissal of plaintiff's complaint for failure to state a claim upon which relief could be granted. The plaintiff in *Sides* alleged that she was discharged for her refusal to testify untruthfully or incompletely in a court action against her employer. In determining that the plaintiff's complaint stated a cause of action under a public policy exception, the *Sides* Court stated:

> [W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

*Id.* at 342, 328 S.E.2d at 826. A second public policy exception was created in *Coman v. Thomas Manufacturing Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989). In *Coman*, an employee was discharged for refusing to violate government highway safety rules. The *Coman* Court held that the defendant's discharge of plaintiff was in violation of the public policy of North Carolina. Although these two cases seem to have expanded the employment-at-will doctrine, subsequent case law has made it very clear that the decisions

in *Sides* and *Coman* have only narrowly eroded the employment-at-will doctrine. *Burgess*, 326 N.C. at 209-10, 388 S.E.2d at 137.

Plaintiff in the case *sub judice*, argues that this Court should create a third public policy exception based on an employee's exercise of his legal rights and privileges. Plaintiff acknowledges his employment-at-will status but argues that this should not require him to waive his basic constitutional right. Plaintiff further argues that he was terminated when he asserted his basic Fourth Amendment right to be free from unreasonable searches and seizure, invasion of privacy and deprivation of due process. In order to determine whether a third public policy exception should be adopted, we must first determine whether defendant's random drug testing program was unconstitutional.

The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" The essential purpose of the Fourth Amendment is to "impose a standard of 'reasonableness' upon the exercise of discretion by government officials . . . in order to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Delaware v. Prouse*, 440 U.S. 648, 653-54, 59 L.Ed.2d 660, 667 (1979); *Camara v. Municipal Court*, 387 U.S. 523, 528, 18 L.Ed.2d 930, 935 (1967).

Courts have clearly established that individuals retain an expectation of privacy and a right to be free from government intrusion in the integrity of their own bodies. *United States v. Ramsey*, 431 U.S. 606, 52 L.Ed.2d 617 (1977). With this premise in mind, Courts have determined that governmental taking of a urine specimen constitutes a search and seizure within the meaning of the Fourth Amendment. *Skinner v. Railway*, 489 U.S. 602, 103 L.Ed.2d 639 (1989); *National Treasury Employees Union v. Von Raab*, 816 F.2d 170 (1987).

The Supreme Court, however, established that random drug testing of urine in the workplace can be constitutional if the reasonableness of the search is judged by balancing its intrusion on the individual's Fourth Amendment interests against the promotion of legitimate governmental interests. *Skinner*, 489 U.S. 602, 103 L.Ed.2d 639. In *Skinner*, the Court allowed random drug testing where the individual tested was engaged in activity which involved either public safety or safety concerns for others because it was

a legitimate governmental interest. *Id.* The Court in *Twigg v. Hercules Corp.*, 185 W.Va. 155, 406 S.E.2d 52 (1990) stated:

> Where a business is engaged in an activity which involves either public safety or safety concerns for others, we find that there exists a legitimate reason for the implementation of a drug testing program[.] . . . However, there must be a showing by the employer that the employees required to undergo such testing have responsibilities or duties which are connected to the safety concerns of others.

*Twigg,* 185 W.Va. at 159, 406 S.E.2d at 56.

[1] Applying this standard to the facts in the case *sub judice,* the record showed that plaintiff was in a position in which public safety or the safety of others was an overriding concern. Plaintiff's duties consisted of generally performing preventative maintenance and repairs on airport terminal air conditioning and ventilating and heating systems, but plaintiff also had security clearance to drive a motor vehicle 10 M.P.H. in a designated area on the apron of the flight area in order to get access to the systems located on the outside of the building. We find that plaintiff, if drug impaired while operating a motor vehicle on the apron of the flight area, could increase the risk of harm to others. Accordingly, we find that the drug testing policy implemented by defendants was constitutional and therefore, plaintiff does not state a cognizable claim for relief.

[2] Plaintiff next argues that the trial court committed reversible error when it held that plaintiff failed to state a cognizable claim under the bad faith exception to the employment-at-will doctrine. This argument is meritless.

The Court in *Coman,* 325 N.C. 172, 381 S.E.2d 445, noted that North Carolina had not recognized a bad faith exception to the employment-at-will doctrine but stated that other courts in other states "have recognized wrongful discharge theories characterized either as the bad faith exception to the at-will doctrine or under the implied covenant of good faith and fair dealing." *Id.* at 177, 381 S.E.2d at 448 (citations omitted). In addition, the *Coman* Court stated that "[b]ad faith conduct should not be tolerated in employment relations, just as it is not accepted in other commercial relationships." *Coman,* 325 N.C. at 177, 381 S.E.2d at 448. However, the statements addressing a bad faith exception were not relied

upon in *Coman*'s ultimate holding that plaintiff had stated a valid claim for wrongful discharge based on the public policy exception to the employment-at-will doctrine.

Most Courts interpreting *Coman* have recognized that the discussion in *Coman* of a bad faith discharge was dicta, but have come to different conclusions. *English v. Gen. Elec. Co.*, 765 F. Supp. 293 (E.D.N.C. 1991) (disallowing tort claim for bad faith exception); *Haburjak v. Prudential Bache Sec., Inc.*, 759 F. Supp. 293 (W.D.N.C. 1991) (disallowing tort claim for bad faith exception); *Iturbe v. Wandel & Goltermann, Technologies, Inc.*, 774 F. Supp. 959 (M.D.N.C. 1991) (allowing claim for bad faith discharge).

However, two recent cases, *Salt*, 104 N.C. App. 652, 412 S.E.2d 97 and *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992), have clarified North Carolina's position on the issue of a bad faith exception. The *Salt* Court and the *Amos* Court both held that North Carolina does not recognize an independent tort claim for wrongful discharge under the bad faith exception. We therefore find plaintiff has not stated a cognizable claim.

By plaintiff's second assignment of error, plaintiff contends that he is not subject to random drug testing because he is neither (1) a sensitive public employee because of either safety or security reasons or (2) an individual suspected of drug use.

A discussion of this assignment of error was encompassed in the first argument where we determined that plaintiff was indeed a sensitive public employee because of safety concerns. As such, plaintiff is subject to random drug testing as a legitimate governmental interest. We do not deem it necessary to further address this issue.

[3] By plaintiff's third assignment of error, plaintiff contends that the trial court committed reversible error in dismissing plaintiff's constitutional claims against defendant's random drug testing procedure policy that afforded plaintiff no prior notice of testing or test procedure, that included no guarantee of confidentiality of test results or immunity from criminal prosecution in the case of a positive result, and that led to plaintiff's termination with no opportunity for a hearing before an impartial tribunal. We disagree.

After a careful review of the record, we find no violation of plaintiff's constitutional rights. The arguments raised in this

assignment of error are moot in that (1) we found that the defendants' random drug testing procedure was constitutional and (2) plaintiff never participated in the testing procedure which effectively precluded any possible constitutional violation. As such, plaintiff has failed to raise a cognizable claim. This assignment of error is overruled.

By plaintiff's fourth assignment of error, plaintiff contends that the trial court committed reversible error when it dismissed plaintiff's claims in his complaint which were based upon defendants' denial of plaintiff's right of substantive due process rights. We disagree.

"An employment discharge violates substantive due process rights if it is based upon constitutionally impermissible grounds, regardless of whether the employee had a property interest in continued employment." *Privette v. University of North Carolina*, 96 N.C. App. 124, 135, 385 S.E.2d 185, 190 (1989).

Plaintiff alleged that his substantive due process rights were violated because he was forced to elect between exercise of a constitutional right and the privilege of government employment. As we have made an earlier determination that plaintiff's constitutional rights were not violated, we find no violation of substantive due process rights.

In plaintiff's fifth assignment of error he argues that the trial court committed reversible error when it dismissed plaintiff's claims in his complaint which were based upon defendants' denial of plaintiff's right to procedural due process.

In order to sufficiently state a claim of denial of due process rights, plaintiff must reveal "a colorable claim that a 'property' or 'liberty' interest was violated by the procedures attendant to plaintiff's discharge." *Presnell v. Pell*, 298 N.C. 715, 723, 260 S.E.2d 611, 616 (1979).

In the present case, there has been no dispute and the record clearly reveals that plaintiff is an employee-at-will. "At-will employees have no property interests in their employment cognizable under the due process clause." *Privette*, 96 N.C. App. at 137, 385 S.E.2d at 192. This assignment of error is overruled.

We have carefully reviewed assignments of error seven and eight and find them to be meritless.

ELLIS v. N.C. CRIME VICTIMS COMPENSATION COMM.

[111 N.C. App. 157 (1993)]

The trial court's decision is affirmed.

Chief Judge ARNOLD and Judge ORR concur.