Hopkins v. MWR Mgmt. Co., 2015 NCBC 99.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 697

BRANDON HOPKINS,

          Plaintiff,

v.

MWR MANAGEMENT COMPANY d/b/a
MICHAEL WALTRIP RACING and TY
NORRIS,

          Defendants.

ORDER & OPINION

{1}    **THIS MATTER** is before the Court upon (i) Defendant MWR Management Company's ("Defendant" or "MWR") Partial Motion to Dismiss Plaintiff Brandon Hopkins' ("Plaintiff" or "Hopkins") Amended Complaint (the "Motion to Dismiss") and (ii) Plaintiff's Motion for Leave to File Second Amended Complaint (the "Motion to Amend") (collectively, the "Motions").

{2}    The Court, having considered the Motions, the briefs supporting and opposing the Motions, and the arguments of counsel at a September 22, 2015 hearing on the Motion to Dismiss, hereby **GRANTS** the Motion to Dismiss and **GRANTS** the Motion to Amend.

*Van Kampen Law, PC, by Joshua R. Van Kampen and Sean F. Herrmann, for Plaintiff Brandon Hopkins.*

*James, McElroy & Diehl, P.A., by William K. Diehl, Jr., Jon P. Carroll, and Adam L. Ross, for Defendants MWR Management Company and Ty Norris.*

Bledsoe, Judge.

I.

PROCEDURAL BACKGROUND

{3}    Hopkins commenced this action on January 12, 2015, bringing various claims arising out of MWR's termination of Hopkins' employment on August 6, 2014. Hopkins' claims center around the allegation that MWR terminated him for seeking surgery on a shoulder injury sustained during the course of his employment.

{4}     Hopkins amended his complaint with MWR's consent on May 26, 2015. MWR subsequently filed its answer and the pending Motion to Dismiss on July 15, 2015. The Court held a hearing on the Motion to Dismiss on September 22, 2015, at which all parties were represented by counsel.

{5}     Hopkins filed the Motion to Amend on September 15, 2015, shortly before the hearing on the Motion to Dismiss. Hopkins seeks leave to file a second amended complaint, which contains substantially unchanged factual allegations and seeks only to add claims under the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). The Motion to Amend is fully briefed, and the Court elects to consider the Motion to Amend without a hearing pursuant to Business Court Rule 15.4(a). As such, both Motions are now ripe for decision.

II.

FACTUAL BACKGROUND

{6}     The Court does not make findings of fact when ruling on a motion to dismiss pursuant to Rule 12(b)(6) because such a motion "does not present the merits, but only whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). Thus, the Court only recites those allegations in Hopkins' Amended Complaint that are relevant to its resolution of the current Motion to Dismiss. *See id.* A motion to amend is addressed to the sound discretion of the trial court. *Nationsbank of N.C., N.A. v. Baines*, 116 N.C. App. 263, 268, 447 S.E.2d 812, 815 (1994).

A.  Hopkins' Employment and Termination

{7}     MWR owns and operates racing teams that compete in the National Association of Stock Car Auto Racing ("NASCAR") Sprint Cup series. (*See* Am. Compl. ¶¶ 6, 10.)

{8}     Hopkins joined MWR in November 2011 as a tire changer and mechanic under a one-year contract. (Am. Compl. ¶ 10.) Based on his performance, MWR subsequently "signed [Hopkins] to a second one-year contract and then a two-year contract." (Am. Compl. ¶ 10.) Initially, Hopkins was assigned to the race team for

the car driven by Martin Truex, Jr. but was eventually transferred to the position of tire changer on the #15 car driven by Clint Bowyer. (Am. Compl. ¶ 10.)

{9} In March of 2013, Hopkins was struck by Clint Bowyer's race car during a pit stop at a NASCAR race but came away from the incident "unscathed." (Am. Compl. ¶ 13.) Then, during a pit stop in an October 2013 race, Bowyer's car again struck Hopkins, allegedly "bolting him off the driver side of the hood" so that Hopkins landed hard on his right shoulder. (Am. Compl. ¶ 14.) Despite this collision, Hopkins finished the race. (Am. Compl. ¶ 14.)

{10} After the October 2013 incident, Hopkins asserts that he started to feel "pain in his shoulder that was radiating into his neck." (Am. Compl. ¶ 15.) Hopkins attempted to improve his shoulder through extensive physical therapy and received cortisone shots to ease his pain. (Am. Compl. ¶¶ 16–17.) Hopkins finally asked Athletic Trainer Pam Brown to "open up a workers compensation claim" in late January or early February of 2014. (Am. Compl. ¶ 18.)

{11} An MRI conducted in March of 2014 revealed that Hopkins had a torn labrum in his right shoulder. (Am. Compl. ¶ 18.) Despite his doctor's advice that "he needed a surgical repair" and Pam Brown's assessment that "the damage was done[,]" Hopkins "said he would delay the surgery until he couldn't perform any longer." (Am. Compl. ¶ 18.)

{12} In April 2014, Hopkins told his crew chief and Pam Brown that he wanted to have the surgery as soon as possible, but he was allegedly urged to delay his surgery until the season ended or until the team knew whether it qualified for the NASCAR playoff system. (Am. Compl. ¶ 19.)

{13} In June 2014, Hopkins told his pit coach that the pain in his shoulder was "affecting his ability to sleep[,]" and he told his crew chief that he desired to have the surgery as soon as possible. (Am. Compl. ¶ 21.) Hopkins contends that he was again encouraged to delay surgery until the end of the 2014 NASCAR season, so he "sucked it up and tried to work through the pain." (Am. Compl. ¶ 21.) Hopkins alleges that he continued working for the rest of the summer of 2014, although he was "unable to

work out and could only partially participate in pit practice" as he was "trying to save his shoulder for the beating it would take on race day." (Am. Compl. ¶ 23.)

{14} On July 30, 2014, Hopkins finally informed Pam Brown that he could not take the pain any longer and that the next scheduled race would be his last as a member of the pit crew until he had surgery. (Am. Compl. ¶ 24.) Brown responded by rescheduling his surgery for August 7, 2014. (Am. Compl. ¶ 24.) MWR, however, terminated Hopkins on August 6, 2014, the day before his worker's compensation surgery. (Am. Compl. ¶ 28.)

{15} Hopkins asserts that, even with his injury, he was "probably in the top 10–15%" of front tire changers in NASCAR's Sprint Cup and that "MWR did not identify a single deficiency" in his job performance that justified his termination. (Am. Compl. ¶ 39.)

{16} Hopkins underwent shoulder surgery on August 7, 2014. (Am. Compl. ¶ 41.) The surgery was successful, and, after diligent physical therapy, Hopkins' doctor cleared him "to return to work with no restrictions" on October 28, 2014. (Am. Compl. ¶ 41.)

B. The Employment and Performance Agreement

{17} Hopkins alleges that MWR breached his written two-year employment contract with the company when it terminated his employment. (Am. Compl. ¶¶ 10, 47–52, 86.) MWR attached this Employment and Performance Agreement ("Agreement") as Exhibit A to its answer. (Answer Ex. A., hereinafter "Agreement.") "When ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). Thus, the Court may properly consider the Agreement in ruling on the Motion to Dismiss.

{18} The Agreement provided that Hopkins' term of employment would run from December 1, 2013 to November 30, 2015, "[s]ubject to the termination provisions" contained in Paragraph 6. (Agreement ¶ 2.) Paragraph 6 permitted MWR to terminate the Agreement "with cause" in the event Hopkins engaged in certain

conduct. (Agreement ¶ 6(b)–(c).) In addition, Paragraph 6(c) specified that "any other termination" of the Agreement by Defendant would be a termination "without cause." (Agreement ¶ 6(c).) In the event MWR terminated Hopkins without cause, the Agreement provided that Hopkins would receive a payment based on his salary and fees for working with MWR's pit crew. (Agreement ¶ 6(c).)

{19} Hopkins claims that MWR's termination of his employment was without cause and violated the terms of the Agreement. (Am. Compl. ¶¶ 48–49.) He also claims that his termination was in violation of North Carolina public policy as expressed in the state's Equal Employment Practices Act, Persons with Disabilities Protection Act, and Retaliatory Employment Discrimination Act. (Am. Compl. ¶¶ 82–85.)

{20} MWR seeks dismissal of Hopkins' breach of contract claim on the grounds that Hopkins was an employee at will. (Def.'s Mot. Dismiss ¶ 8.) MWR also moves to dismiss in part Hopkins' wrongful discharge claim because Hopkins does not allege that he was a "person with a disability" as defined in the Persons with Disabilities Protection Act. (Def.'s Mot. Dismiss ¶¶ 9–10; Def.'s Br. Supp. Mot. Dismiss 13–14.)

III.

ANALYSIS

A. <u>Standard of Review</u>

{21} When ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court asks "whether the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Enoch v. Inman*, 164 N.C. App. 415, 417, 596 S.E.2d 361, 363 (2004). Thus, courts generally construe complaints liberally and accept all allegations as true, but a "trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). Dismissal of a claim on a Rule 12(b)(6) motion is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the

complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985) (citation omitted).

B. <u>Breach of Contract</u>

{22}  The Court initially notes that, while the Amended Complaint alleges that Hopkins was a contract employee, the parties now agree that he was an at-will employee.  (*See* Pl.'s Resp. Opp. Mot. Dismiss 4) ("Defendant contends that [Paragraph] 6(c) of [the] Agreement makes him an at-will employee. . . . Plaintiff agrees.").

{23}  The Court concurs with the parties' conclusion.  North Carolina law presumes that an employee is an employee at will. *Wuchte v. McNeil*, 130 N.C. App. 738, 740, 505 S.E.2d 142, 144 (1998) (citing *Still v. Lance*, 279 N.C. 254, 259, 182 S.E.2d 403, 406 (1971)).  The employment-at-will presumption may be overcome if the employment contract specifies a definite period of employment or states that the employee can only be terminated for cause. *Id.  See also Boesche v. Raleigh-Durham Airport Auth.*, 111 N.C. App. 149, 152, 432 S.E.2d 137, 139 (1993) (citation omitted) (holding that an employment-at-will relationship can be terminated "by either party at any time for any reason or no reason").

{24}  Although Hopkins' employment contract was for a definite two-year period, that term was "subject to the termination provisions" laid out in Paragraph 6 of the Agreement, which allowed for termination with or without cause.  (Agreement ¶¶ 2, 6(c).)  Therefore, Hopkins was not entitled to a definite term of employment, and the parties now properly agree that he was an at-will employee because the employment relationship could be terminated by either party at any time for any reason or no reason. *See Boesche*, 111 N.C. App. at 152, 432 S.E.2d at 139.

{25}  When an at-will employee is terminated and brings a wrongful discharge claim, the employee "does not have a claim for breach of contract against his or her employer on that basis." *Hill v. Medford*, 158 N.C. App. 618, 627, 582 S.E.2d 325, 331 (Martin, J., dissenting), *rev'd*, 357 N.C. 650, 588 S.E.2d 467 (2003) (adopting then-Judge Martin's dissent).  By the terms of the Agreement and by his own admission, Hopkins was an at-will employee, and his breach of contract claim must be dismissed.

{26}   In reaching this conclusion, the Court dispenses with Hopkins' argument that he can advance both his contract and his tort claims under alternative pleading. (*See* Pl.'s Resp. Opp. Mot. Dismiss 3, 8.)   Neither *Hill v. Medford* nor this Court's decision restricts our state's alternative pleading standards set out in the Rules of Civil Procedure.  *See* N.C. R. Civ. P. 8(e)(2).   Indeed, the decision in *Hill* recognized a party's ability to allege that he was an at-will employee with a tort claim for wrongful discharge or, alternatively, a contract employee with a breach of contract claim.  *Hill*, 158 N.C. App. at 625–26, 582 S.E.2d at 330.   *Hill* instead applies to situations— identical to the instant case—where a plaintiff acknowledges his at-will employment status but seeks to assert both wrongful discharge and breach of contract claims for the single act of his termination.

   C.  <u>Wrongful Discharge in Violation of Public Policy</u>

{27}   Claims for wrongful discharge in violation of public policy are an exception to the general rule that at-will employees can be fired for any reason or no reason. *Horne v. Cumberland Cnty. Hosp. Sys., Inc.*, 746 S.E.2d 13, 17 (N.C. Ct. App. 2013) (citing *Garner v. Rentenbach Constructors Inc.*, 350 N.C. 567, 571, 515 S.E.2d 438, 441 (1999)).   A plaintiff bears the burden of pleading that his termination occurred for a reason that violates the public policy of North Carolina.   *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 693, 575 S.E.2d 46, 51 (2003).   North Carolina courts have defined "public policy" to mean "the principle of law which holds that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good."   *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 175 n.2, 381 S.E.2d 445, 447 n.2 (1989).

{28}   A claim for wrongful discharge in violation of public policy is "confined to the express statements within our General Statutes or our Constitution."  *Whiting v. Wolfson Casing Corp.*, 173 N.C. App. 218, 222 618 S.E.2d 750, 753 (2005) (citation omitted).   For this reason, wrongful discharge claims must be pled with specificity. *Gillis v. Montgomery Cnty. Sheriff's Dep't*, 191 N.C. App. 377, 379, 663 S.E.2d 447, 449 (2008).   To state a claim, a plaintiff is required to allege specific conduct that violated a specific expression of North Carolina public policy.  *Considine v. Compass*

*Grp. USA, Inc.*, 145 N.C. App 314, 321–22, 551 S.E.2d 179, 184, *aff'd per curiam*, 354 N.C. 568, 557 S.E.2d 528 (2001).

{29}   The Amended Complaint alleges that MWR terminated Hopkins on the basis of a disability—his shoulder injury—in violation of the state's public policy as set forth in the Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2, and the North Carolina Persons With Disabilities Protection Act (the "NCPDPA"), N.C. Gen. Stat. § 168A-2.[1]  (Am. Compl. ¶¶ 82–83.)  The Equal Employment Practices Act asserts the state's public policy "to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination on account of . . . handicap by employers[.]"  N.C. Gen. Stat. § 143-422.2 (2014).  The statute does not define "handicap," but North Carolina courts routinely substitute the NCPDPA's definition of disability.  *Sossamon v. Granville-Vance Dist. Health Dep't,* No. COA13-900, 2014 N.C. App. LEXIS 206, at *14–15 (N.C. Ct. App. Feb. 18, 2014) (unpublished); *Simmons v. Chemol Corp.*, 137 N.C. App. 319, 322, 528 S.E.2d 368, 370 (2000); *McCullough v. Branch Banking & Trust Co., Inc.*, 136 N.C. App. 340, 347, 524 S.E.2d 569, 574 (2000); *see also, e.g.*, *Rishel v. Nationwide Mut. Ins. Co.*, 297 F. Supp. 2d 854, 875 (M.D.N.C. 2003).

{30}   To state a claim for wrongful discharge on the basis of disability, Hopkins must plead sufficient facts to establish that he was "a person with a disability" under the NCPDPA.  *McCullough*, 136 N.C. App. at 347–48, 524 S.E.2d at 574 ("These statutes, although enacted at different times, relate to the same subject matter, employment discrimination against handicapped persons, and, thus, must be construed together . . ."); *see also Sabrowski v. Albani-Bayeux, Inc.*, 2003 U.S. Dist. LEXIS 23242, *27 (M.D.N.C. Dec. 19, 2003) (explaining that, while the NCPDPA is not fully incorporated into the Equal Employment Practices Act, "North Carolina

---

[1] The NCPDPA authorizes an independent cause of action to enforce violations of that statute.  N.C. Gen. Stat. § 168A-11.  It is not clear that a claim of wrongful discharge on the basis of disability can be premised solely on the NCPDPA's policy statement without also invoking the Equal Employment Practices Act.  The Court need not resolve that question at this time, although it notes that such a situation has arisen without comment in other cases.  *See Clark v. United Emergency Servs.*, No. COA07-592, 2008 N.C. App. LEXIS 660, *19 (N.C. Ct. App. Apr. 15, 2008) (unpublished); *Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004).

courts have also recognized wrongful discharge claims by employees based on disability discrimination in violation of the [Equal Employment Practices Act] as interpreted by the NCPDPA").

{31} A "person with a disability" under the NCPDPA is anyone who "(i) has a physical or mental impairment which substantially limits one or more major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." N.C. Gen. Stat. § 168A-3(7a) (2014). "Physical or mental impairment" encompasses a comprehensive list of disorders or conditions, but the statute excludes conditions that are "temporary in nature, lasting six months or fewer, and leaving no residual impairment." N.C. Gen. Stat. § 168A-3(7a)(a). "Major life activities" under the NCPDPA include a variety of life functions, such as "sleeping, lifting, bending, . . . and working." *Id.* Hopkins alleges that he qualifies as a "person with a disability" under either prong (i) or prong (iii) of the statutory definition.

{32} Hopkins contends that his shoulder injury was a physical impairment that substantially limited one or more of his major life activities and that he was therefore a "person with a disability" under the NCPDPA. (Am. Compl. ¶ 82.) This legal conclusion is unsupported by the Amended Complaint. A torn labrum may qualify as "a physical or mental impairment" under the statute, but the facts as pleaded do not support Hopkins' allegation that the impairment lasted more than six months and substantially limited one or more of his major life activities.

{33} First, the facts pleaded reflect that Hopkins' impairment was "temporary in nature, lasting six months or fewer, and leaving no residual impairment." N.C. Gen. Stat. § 168A-3(7a)(a). Hopkins had surgery on August 7, 2014, and achieved a full recovery in less than three months when his doctor cleared him to return to work with no restrictions on October 28, 2014. (Am. Compl. ¶ 41.) The injury's impact on his ability to sleep or participate in team workouts did not begin until June 2014, which is fewer than six months before his full recovery. (Am. Compl. ¶¶ 21–23.) Thus, any effect of the injury lasting more than six months was a result of the decision to delay surgery rather than the nature of the injury itself.

{34} Alternatively, Hopkins has not alleged substantial impairment of a major life activity. At the hearing, Hopkins directed the Court's attention to his allegations regarding substantial impairment of his ability to sleep and lift. However, the Amended Complaint only alleges that Hopkins told his pit coach that his shoulder pain "affected his ability to sleep" in early June 2014. (Am. Compl. ¶ 21.) Without more, this statement does not give rise to an inference that Hopkins was "substantially limited" in his ability to sleep. *See Anderson v. Discovery Commc'ns*, 517 Fed. Appx. 190, 194–95 (4th Cir. 2013) (holding that a plaintiff who alleged receiving less than four hours of sleep nightly on account of insomnia was not substantially limited in a major life activity under the ADA); *Boerst v. Gen. Mills Operations*, 25 Fed. Appx. 403, 407 (6th Cir. 2002) ("Getting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA.").[2]

{35} Hopkins asserts that he continued to work through the summer of 2014, although he "was unable to work out and could only partially participate in pit practice" as he was "trying to save his shoulder for the beating it would take on race day." (Am. Compl. ¶ 23.) Hopkins' inability to participate in team workouts while continuing to perform the other aspects of his job does not indicate that he was substantially limited in the major life activities of lifting or working. *See Reynolds v.*

---

[2] The NCPDPA is the North Carolina equivalent of the ADA. *See Johnson v. Bd. Of Trs. of Durham Tech. Cmty. College*, 157 N.C. App. 38, 46, 577 S.E.2d 670, 674 (2003). As such, federal cases interpreting "person with a disability" under the ADA are illustrative where NC law is silent. *See, e.g.*, *Youse v. Duke Energy Corp.*, 171 N.C. App. 187, 193, 614 S.E.2d 396, 401 (2005) (approving the evidentiary scheme used in evaluating claims for disability discrimination under the ADA for wrongful discharge claims on the basis of handicap); *see also, e.g.*, *Jefferson v. Biogen Idec, Inc.*, No. 5:11-CV-237-F, 2012 U.S. Dist. LEXIS 118899, *21 (E.D.N.C. Aug. 22, 2012) ("[W]hen faced with state law wrongful discharge on the basis of handicap/disability claims, courts utilize the evidentiary framework used in evaluating disability discrimination claims under the ADA."); *Morris v. BellSouth Telecomms.*, 302 F. Supp. 2d 515, 524–25 (M.D.N.C. 2004) ("[S]tate law claims for wrongful termination for discharge due to handicap are analyzed with the same burden shifting test as claims brought under the ADA."). That the above cases interpreted the ADA without applying the broader definition of "disability" advanced by the ADA Amendments Act of 2008 is not problematic. Our legislature amended the NCPDPA after the ADA Amendments Act of 2008, but North Carolina's definition of "a person with a disability" still excludes temporary conditions and did not add a mandate for broad coverage as the federal law did. 2011 N.C. Sess. Laws 94; *see infra* ¶ 44.

*Am. Nat'l Red Cross*, 701 F.3d 143, 152–53 (4th Cir. 2012) (holding that the plaintiff was not substantially limited in his ability to lift under the ADA where his alleged injuries did not restrict him from doing activities of central importance to most people's daily lives); *Gravitte v. Mitsubishi Semiconductor Am., Inc.*, 109 N.C. App. 466, 471, 428 S.E.2d 254, 257, *disc. rev. denied*, 334 N.C. 163, 432 S.E.2d 360 (1993) (stating that "plaintiff's condition must limit more than her mere ability to work a particular job in order for it to affect a major life activity"). Taken as true, Hopkins' pleadings indicate that he could, in fact, perform most of his job duties but chose to exert himself sparingly. *See Clark v. United Emergency Servs.*, No. COA07-592, 2008 N.C. App. LEXIS 660, *22–23 (N.C. Ct. App. Apr. 15, 2008) (unpublished) (holding that plaintiff failed to state a claim under the NCPDPA when she could perform her job duties at times when she was not receiving treatments for a blood disorder).

{36} The Amended Complaint also fails to allege sufficient facts that Hopkins was "regarded as" having an impairment that substantially limited his major life activities. A person is "regarded as having an impairment" and therefore is a "person with a disability" under the NCPDPA when he (i) "has a physical or mental impairment that does not substantially limit major life activities but that is treated as constituting such a limitation" or (ii) has no such impairment limiting a major life activity "but is treated as having such an impairment." N.C. Gen. Stat. § 168A-3(7a).

{37} Hopkins does not plead facts alleging that MWR regarded him as disabled. Fairly read, the Amended Complaint indicates that MWR knew of the injury but considered Hopkins a capable worker between the time he was injured and his surgery. Hopkins himself asserts that even while injured he was "probably in the top 10-15%" of front tire changers in the Sprint Cup and that MWR did not identify any deficiency in his job performance when they terminated him. (Am. Compl. ¶ 39.) Hopkins' efforts to "suck[] it up" and "work through the pain," (Am. Compl. ¶ 21), do not permit an inference that MWR treated him as suffering an impairment that was not temporary and substantially limited his major life activities. *See, e.g., Sledge v. Graphic Packaging Int'l, Inc.*, No. 1:12CV1141, 2014 U.S. Dist. LEXIS 36102, at *20 (M.D.N.C. Mar. 19, 2014) (interpreting the NCPDPA and granting judgment for

defendant when the evidence showed that defendant "knew only of an injury that was likely to affect Plaintiff temporarily and to heal completely"); *Rishel*, 297 F. Supp. 2d at 867 (stating that, under the ADA, an employer's awareness of an employee's impairment, without more, is insufficient to support a "regarded as" claim).

{38} In sum, the Court concludes that the facts pleaded do not support Hopkins' allegation that MWR perceived or regarded Hopkins as having an injury that substantially limited his major life activities. At most, the Amended Complaint allows for an inference that MWR terminated Hopkins because it did not want to lose his services while he received surgery on, and recovered from, a temporary injury. As such, Hopkins cannot show that he was regarded as disabled under North Carolina law, and thus his wrongful discharge claim based on a perceived disability must fail. *See, e.g.*, *Rishel*, 297 F. Supp. 2d at 867 (dismissing wrongful discharge claim under North Carolina law based on perceived disability under NCPDPA).

{39} Thus, because Hopkins has not shown that he was a "person with a disability" under the NCPDPA, his wrongful discharge claim on the basis of disability must be dismissed. *See Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 210, 388 S.E.2d 134, 137 (1990). The Court further concludes that the Amended Complaint does not merely suffer from an absence of allegations. Instead, it asserts facts that affirmatively defeat a claim of disability, and so the Court dismisses this claim with prejudice. The claim for wrongful discharge survives only on the basis of an alleged violation of North Carolina's Retaliatory Employment Discrimination Act, which MWR did not challenge in the Motion to Dismiss.

D. Motion for Leave to Amend

{40} When a party seeks leave of court to amend a pleading, "leave shall be freely given when justice so requires." N.C. R. Civ. P. 15(a). A motion to amend is addressed to the sound discretion of the trial court and is reviewable only for abuse of discretion. *House of Raeford Farms, Inc. v. Raeford*, 104 N.C. App. 280, 282–83, 408 S.E.2d 885, 887 (1991). A motion to amend may be denied for undue delay, bad faith, undue prejudice, futility of amendment, and repeated failure to cure defects by previous amendments. *Id.*

{41} Hopkins filed the present Motion to Amend on September 15, 2015, seeking leave to file a Second Amended Complaint. The proposed Second Amended Complaint seeks to add claims under the ADA and the FMLA. (Pl.'s Mot. Leave Amend Ex. 1 ¶¶ 96-109.) Hopkins asserts that he "need not amend one iota of the FACT section" as these new claims arise from the same factual allegations in the Amended Complaint. (Pl.'s Mot. Leave Amend 1) (capitalization in original.)

{42} MWR opposes the Motion to Amend on the grounds of undue delay, prejudice, and futility. (Def.'s Mem. Opp. Mot. Leave Amend 1.) MWR alleges that allowing the additional claims would cause undue delay and prejudice because Defendants have already initiated written discovery, deposed several fact witnesses, and Hopkins has been able to seek leave to add these claims for several months before doing so. (Def.'s Mem. Opp. Mot. Leave Amend 3–4.)

{43} The Court declines to deny the Motion to Amend on the grounds of undue delay. Hopkins sought leave to add these claims within the ADA's 90-day limitations period after receiving his right-to-sue letter from the Equal Employment Opportunity Commission on July 1, 2015. (Pl.'s Mot. Leave Amend 1.) The Court similarly concludes that MWR will not be unfairly prejudiced by the addition of these claims because Hopkins put MWR on notice of these potential claims as early as March 2015 when the parties submitted their Case Management Report in this action. (Pl.'s Mot. Leave Amend 1–2.)

{44} MWR also challenges the addition of both claims on the grounds of futility, arguing that Hopkins' factual allegations are insufficient to state a claim under either the ADA or the FMLA. However, whether Hopkins was entitled to FMLA leave is a distinct analysis from the question of his alleged disability under the NCPDPA. Additionally, the Court does not believe that its ruling in this order has decided his proposed ADA claim. While the two statutory schemes are substantially similar, the ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553, reinstated a more inclusive scope of protection by mandating that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by [its] terms." 42 U.S.C. § 12102(4)(A) (2012). *See also*

*Summers v. Altarum, Inst., Corp.*, 740 F.3d 325, 329 (4th Cir. 2014) (discussing the ADA Amendments Act of 2008 and its legislative history). The Court is therefore not prepared to consider the proposed claims as futile prior to amendment and believes that their legal sufficiency is more properly tested through later motions practice after amendment with appropriate briefing and argument.

{45} For these reasons, the Court therefore concludes in the exercise of its discretion that it is appropriate to allow Hopkins to amend his complaint to add claims under the ADA and FMLA as proposed. The Court grants the Motion to Amend without prejudice to MWR's right to seek dismissal of the second amended complaint, in whole or in part, as MWR may deem appropriate.

IV.

CONCLUSION

{46} For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion to Dismiss and **GRANTS** Plaintiff's Motion to Amend as follows:

a. Plaintiff's claim for breach of contract is **DISMISSED** with prejudice.

b. Plaintiff's claim for wrongful discharge in violation of public policy on the basis of an alleged violation of the NCPDPA and the Equal Employment Practices Act is **DISMISSED** with prejudice.

c. Plaintiff shall be permitted to file a second amended complaint, in form and content consistent with the conclusions and rulings set forth in this Order and Opinion, no later than five (5) days from the date of the entry of this Order and Opinion, without prejudice to Defendant's right to move to dismiss the second amended complaint, in whole or in part, as Defendant may deem appropriate.

**SO ORDERED**, this the 5th day of November, 2015.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases